**Opinion filed November 15, 2018**



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00336-CR
_____

## KELLY ALEXANDER LEWIS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 385th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR44643**

## M E M O R A N D U M   O P I N I O N

In a single indictment, the grand jury indicted Kelly Alexander Lewis with one count of continuous sexual abuse of a child and seven counts of aggravated sexual assault of a child. At the close of the evidence, the State abandoned the continuous-sexual-abuse-of-a-child count, and the trial court submitted the remaining seven counts to the jury. The jury found Appellant guilty of seven counts of aggravated sexual assault of a child and assessed punishment at confinement for

a term of ninety-nine years on each of the seven counts. In addition, the jury assessed a fine in the amount of $10,000 on each count. The trial court ordered that Appellant serve the sentences concurrently.

In four issues on appeal, Appellant contends that (1) the trial court committed reversible error when it refused to allow Appellant to conduct meaningful cross-examination of the victim in an effort to impeach and establish bias or motive; (2) the trial court committed reversible error when it admitted, over Appellant's objection, evidence of Appellant's second police interview; (3) the trial court committed reversible error when it allowed the introduction of recorded jail phone calls into evidence; and (4) the evidence was insufficient to establish that Appellant committed any act of aggravated sexual assault. We affirm.

N.S., the child victim, testified that, in September 2014, she was thirteen years old. At that time, she lived in Midland with Appellant (her father), sister, and stepmother. During that time, N.S. was being homeschooled, and Appellant helped her with her math homework. Appellant helped her not only at home, but also when she visited him at the drilling rig where he worked. On occasions when N.S. visited Appellant at the rig, she spent the night with him in his RV.

N.S. told the jury about the first time that Appellant assaulted her. She was asleep in Appellant's RV. When she woke up, Appellant had his hand under her clothes and was touching her "chest and [her] privates." N.S. asked Appellant what he was doing; he did not answer and appeared to be sleeping. However, each time that N.S. pushed Appellant's hand away, "it would always come right back."

The next morning, Appellant admitted to N.S. that he had not been asleep when he touched her. Appellant told N.S. that he was actually awake when he touched her and that he wanted to continue it even more.

Although N.S. told Appellant that she did not want him to do that to her anymore, sometime later in September 2014, while N.S. was home alone with

2

Appellant, Appellant told N.S. that "he wanted to continue what he asked last time." N.S. told Appellant again that she did not want him to do that, but Appellant took N.S.'s clothes off anyway. Appellant then touched N.S.'s chest and "privates" before "putting his private inside of [her]" and "motioning up and down." After Appellant had finished sexually assaulting N.S., he went to the bathroom, and N.S. went to her bedroom.

N.S. testified that Appellant sexually assaulted her again after that when she spent the night with Appellant at the drilling rig. Once again, Appellant took off N.S.'s clothes and "put his private in [her]." N.S. testified that the assaults also occurred ten to twelve times in Midland—often after Appellant sent N.S.'s stepmother out of the house on an errand.

N.S. also testified that, while on a family trip to New Orleans, N.S. and Appellant were alone in a hotel room when Appellant took off her clothes, lay on her, put "his private" in her, and then cleaned himself up. On another occasion in Midland, while N.S. was doing laundry, Appellant called her into his room, took off her clothes, and "put his part" in her. When Appellant assaulted N.S., he used condoms and poured "clear stuff" on her "privates." N.S. testified that the assaults occurred from September 2014 until January 2015. Appellant told N.S. that he had "counted [the number of assaults] and it was 22."

N.S. testified that Appellant warned her not to tell anyone about the assaults because, if she did, she would be "sent away" and would not be able to live with her family.

In addition to the sexual assaults, the record shows that Appellant had N.S. take nude pictures of herself on her cell phone. Appellant had N.S. save the pictures as draft e-mails in an account to which he had access.

3

Eventually, N.S. called the police when she found out that her stepmother was leaving Appellant. N.S. worried that, if her stepmother left, she would be left alone with Appellant and he would continue to sexually assault her.

After N.S. contacted the police, Appellant met with Sergeant Chris Fuentes, a criminal investigator with the Midland County Sheriff's Office, for an interview. During the interview, Appellant told Sergeant Fuentes that the first time that N.S. came to stay with him at the rig, Appellant woke up during the night and felt N.S. moving his hand underneath N.S.'s shirt and panties. Appellant claimed that he turned over and did not say anything that night. The next day, Appellant asked N.S. if that was the kind of relationship that she wanted with him, and N.S. said, "No." However, Appellant said that sometime later, while his wife was out of town, he again asked N.S. if that was the kind of relationship that she wanted, but that this time N.S. said, "Yes." Appellant admitted that, at first, there was just touching, but that later, he and N.S. engaged in sexual intercourse and his penis penetrated N.S.'s vagina. Although Appellant was unsure of the exact number of times that he and N.S. had intercourse, he agreed that twenty-three or twenty-four times was roughly the right number.

Appellant said that the intercourse took place at both the drilling rig and at the Midland home. Appellant also said that, during the sexual assaults, he used two condoms and a lubricant. Appellant admitted that he knew that the conduct was not right and that it was illegal but that he wanted to "give [N.S.] the relationship that she wanted." During the interview, Appellant also provided Sergeant Fuentes a pre-written e-mail statement in which he corroborated the story that he had told Sergeant Fuentes; Appellant signed a printed copy of the e-mail statement.

After the first interview, Sergeant Fuentes obtained a warrant for Appellant's arrest. Appellant turned himself in a few days later. After Appellant was processed into the county jail, Sergeant Fuentes interviewed him a second time. Before he

4

began the interview, Sergeant Fuentes read Appellant his rights.[1] Appellant acknowledged that he understood his rights and that he waived them. During the second interview, Appellant once again admitted that he had had sexual intercourse with N.S. multiple times at both the Midland house and at the drilling rig. Appellant also described how he had N.S. save pictures of herself in draft e-mails in an account he had access to on his phone. Appellant deleted the pictures after he had viewed them.

At trial, the State presented audio recordings of Appellant's interviews with Sergeant Fuentes, as well as Appellant's written statement, as evidence. The State also presented three recorded phone calls that Appellant had placed from the county jail. In those recordings, Appellant acknowledged the sexual abuse that had occurred with N.S.

Donna Doyle, a registered nurse at Midland Memorial Hospital, testified that she performed a SANE (sexual assault nurse examiner) exam on N.S. and found a healed transection at the 8:00 position to the hymen, an injury caused by penetration.

Michael Margolis, a forensic interviewer with the Dallas Children's Advocacy Center, testified as an outcry witness. Margolis recounted that N.S. had described to him the chain of the sexual abuse and how Appellant had put "his part inside her" twenty-four times.

Appellant testified on his own behalf during the guilt/innocence phase. Although he acknowledged that he had made the admissions heard on the recordings to Sergeant Fuentes, Appellant denied that he had ever touched, had intercourse with, or otherwise sexually assaulted N.S. in any way. Appellant also denied that he asked N.S. to save nude pictures of herself in draft e-mails. Appellant claimed that, prior to his interviews with Sergeant Fuentes, he had ingested a substantial quantity

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966); TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2018).

of prescription medications in an attempt to kill himself. As a result of the overdose, he was hallucinating and hearing loud noises. Appellant claimed to have almost no recollection of the interviews with Sergeant Fuentes or of the phone calls that he had placed from the jail.

In his fourth issue, Appellant challenges the sufficiency of the evidence supporting his convictions. Appellant primarily contends that the State failed to establish beyond a reasonable doubt that Appellant committed any act of aggravated sexual assault of a child.

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. St*ate, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor

of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

As relevant to the instant case, a person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means or causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor himself. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (iii) (West Supp. 2018). The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2018).

At trial, N.S. described multiple occasions when Appellant sexually assaulted her. N.S. described how Appellant removed her clothes, touched her chest and private parts, "put his privates in [her]," and "motion[ed] up and down." N.S. testified that the assaults took place at the rig, in New Orleans, and ten to twelve times at the Midland house. Additionally, N.S. testified that, at one point, Appellant told her that he had "counted [the number of times] and it was 22."

While N.S.'s testimony alone would be sufficient to support a conviction, Appellant admitted in two separate interviews with Sergeant Fuentes that he had sexual intercourse with N.S. on multiple occasions and that, on those occasions, his penis penetrated N.S.'s vagina. Although Appellant stated that he was not sure of the exact number of sexual acts that occurred, he agreed that twenty-three or twenty-four times was likely correct. Even though in his testimony Appellant denied that he had ever assaulted N.S., we presume that the jury resolved any conflicts in the testimony in favor of the verdict. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

When we view the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the elements of the offense of

aggravated sexual assault of a child beyond a reasonable doubt for each of the seven counts challenged. *See Jackson*, 443 U.S. at 319; *Isassi*, 330 S.W.3d at 638. We overrule Appellant's fourth issue on appeal.

In his first issue, Appellant asserts that the trial court violated his rights under the Texas Rules of Evidence and the Confrontation Clause of the United States Constitution when it refused to allow Appellant to cross-examine N.S. regarding multiple specific instances of conduct. We review a trial court's ruling on admissibility of evidence for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). We will uphold an evidentiary ruling on appeal if it is correct on any theory of law that finds support in the record. *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006); *Dering v. State*, 465 S.W.3d 668, 670–71 (Tex. App.—Eastland 2015, no pet.).

Outside the presence of the jury, Appellant sought permission to cross-examine N.S. regarding multiple specific events that Appellant claimed were relevant to establish bias. Specifically, Appellant sought to ask about the following: (1) N.S.'s juvenile probation for unlawfully restraining an eight-year-old girl that N.S. had taken from a school bus stop; (2) N.S. lying to a counselor about the unlawful restraint incident; (3) N.S. lying about a school lunch lady not letting her eat; (4) N.S. getting into a fight at school; (5) N.S. lying to her parents about getting in trouble at school; and (6) N.S. telling a counselor that she wanted to spend more time with her father but that her father did not want to do so.

Appellant's trial counsel asserted that the testimony was admissible for multiple reasons. Counsel claimed that the trial court should admit the evidence under theories of "[f]alse light, the door has been opened, Rule 613(b) motive, from

her own mouth it upset her, it made her mad, motive, animus against her father, [and] reason to falsely accuse her father."

The State objected to the testimony on the grounds of relevance, Rule 403, Rule 608, and Rule 609 of the Texas Rules of Evidence. The trial court ruled that Appellant was allowed to cross-examine N.S. regarding her statement about wanting to spend more time with her father but that the remaining specific instances of conduct were inadmissible.

On appeal, Appellant cites the Confrontation Clause of the Sixth Amendment, along with Rules 613(b), 608, and 107, in support of his argument. U.S. CONST. amend. VI; TEX. R. EVID. 107, 608, 613(b).

"The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him." *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000) (citing U.S. CONST. amend. VI; *Davis v. Alaska*, 415 U.S. 308, 315 (1974)). "Confrontation means more than being allowed to confront the witness physically." *Id.* (citing *Davis*, 415 U.S. at 315). "A primary interest secured by the Confrontation Clause is the right of cross-examination." *Id.* "Each Confrontation Clause issue must be weighed on a case-by-case basis, carefully taking into account the defendant's right to cross-examine and the risk factors associated with admission of the evidence." *Id.* (citing *Hoyos v. State*, 951 S.W.2d 503, 510 (Tex. App.—Houston [14th Dist.] 1997), *aff'd*, 982 S.W.2d 419 (Tex. Crim. App. 1998)). To determine whether evidence must be admitted under the Confrontation Clause, a trial court should balance the probative value of the evidence sought to be introduced against the risk that its admission may entail. *Id.* (citing *Castillo v. State*, 939 S.W.2d 754, 758 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd)). "The trial court maintains broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral

evidence." *Id.* (citing *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997)).

Generally, the right to present evidence and to cross-examine witnesses under the Sixth Amendment does not conflict with the corresponding rights under the Texas Rules of Evidence. *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009); *see Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001) ("A defendant has a fundamental right to present evidence of a defense as long as the evidence is relevant and is not excluded by an established evidentiary rule."). Nonetheless, "the Confrontation Clause will prevail if there is a conflict between it and the Rules of Evidence." *Lopez*, 18 S.W.3d at 222; *see Carroll v. State*, 916 S.W.2d 494, 501 (Tex. Crim. App. 1996).

Under Texas law, generally, Rule 608(b) prohibits impeaching a witness's credibility with specific instances of the witness's conduct. TEX. R. EVID. 608(b); *Billodeau v. State*, 277 S.W.3d 34, 39–40 (Tex. Crim. App. 2009). However, Rule 613 creates an exception to Rule 608(b) and allows a witness to be impeached by circumstances or statements that show the witness's bias or motive. TEX. R. EVID. 613(b); *Billodeau*, 277 S.W.3d at 40.

First, Appellant argues that it was necessary to cross-examine N.S. about her specific instances of lying in order to present matters to the jury that it could "use to determine whether or not the child victim was a truth-telling witness and impacts her credibility." However, this type of evidence—of specific instances of conduct—is expressly prohibited under Rule 608(b) and, absent an applicable exception, is inadmissible to attack the victim's credibility in general. TEX. R. EVID. 608(b).

Appellant also argues that, per the Confrontation Clause and Rule 613(b), examination about the specific instances of conduct was necessary to establish bias because the instances resulted in disciplinary measures that Appellant took against N.S. Appellant's theory is that, due to his disciplinary measures, N.S. harbored

10

animosity toward Appellant and that that animosity led her to make false claims of abuse against him. However, the past false statements that Appellant attempted to introduce are not similar to the allegations of sexual assault that N.S. made against Appellant and, thus, fail to have any probative value as impeachment of N.S.'s credibility.

For example, in *Lopez*, an allegation that the complainant's mother had physically abused him by throwing him against a washing machine was not admissible to impeach his credibility about his allegations of sexual assault. *Lopez*, 18 S.W.3d at 226. Unlike cases in which the victim's prior allegations concerned accusations of molestation or sexual assault, the victim's allegation of physical abuse in *Lopez* had "almost nothing in common" with his sexual assault accusations against the defendant and was not probative. *Compare id.*, *with Billodeau*, 277 S.W.3d at 42–43 (holding that a child complainant's subsequent threats to accuse his neighbors of molestation was relevant to establishing the complainant's bias, motive, ill will, and credibility), *and Hammer*, 296 S.W.3d at 569–70 (holding that the trial judge abused her discretion in preventing the defendant from cross-examining a child complainant's past allegations of sexual assault and molestation). Likewise, here, N.S.'s alleged lies about not being fed lunch at school, unlawfully restraining a girl, and other instances of misbehavior and deceit have almost nothing in common with her sexual assault accusations against Appellant. As such, while the prejudicial effect of the specific instances of conduct is high, their probative value is low. Therefore, neither the Confrontation Clause nor Texas evidentiary rules demanded that the evidence be admitted.

Lastly, Appellant cites Rule 107 and argues that the trial court's refusal to allow Appellant to fully question N.S. regarding the specific instances of conduct created a false impression with the jury. Specifically, Appellant argues that N.S.'s testimony concerning her homeschooling created "a false impression that the reason

[N.S.] was being homeschooled was to provide [A]ppellant with greater access to the child to continue to allegedly victimize the child."

Rule 107 is one of admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter "opened up" by the adverse party. *Credille v. State*, 925 S.W.2d 112, 116 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd); *see* TEX. R. EVID. 107. "A party 'opens the door' by leaving a false impression with the jury that invites the other side to respond." *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009) (citing *Daggett v. State*, 187 S.W.3d 444, 452 (Tex. Crim. App. 2005)). But, even if a party "opens the door" to rebuttal evidence, a trial court still has discretion to exclude the evidence under Rule 403. *Id.* "Courts generally prohibit a party from using extrinsic evidence to impeach a witness on a collateral issue." *Id.*

Regarding homeschooling, the State offered the following testimony from N.S.:

[PROSECUTOR]: Q.   .  .  . Where were you in school in September of 2014?

[N.S.]: A.  Connections Academy.

Q.  Do you take classes at a building or do you take classes at home for that?

A.  At home.

Q.  So you did all of your schooling at home?

A.  Yes.

Q.  Who taught you most of the time?

A.  My [stepmother].

Q. Did your dad ever help you with anything?

A. Yes.

Q. What subject?

A. Math.

. . . .

Q. When your dad helped you on your math homework, where did he help you?

A. Sometimes at home or at the rig.

. . . .

Q. . . . When you went to the rig, did you stay there overnight?

A. Yes.

N.S.'s testimony does not suggest any motivation for her homeschooling. Nor is there any indication that her homeschooling was a decision made by her father. Instead, the testimony shows that N.S.'s stepmother primarily taught her; Appellant helped N.S. with her math homework—something he likely would have done even if N.S. had been in a public or private school. There is no suggestion that the decision to homeschool N.S. was motivated by a desire to create a greater opportunity for Appellant to assault N.S. as opposed to a decision made for disciplinary issues or simply personal preference. As such, no false impression was created with the jury. The trial court's decision to not allow Appellant to inquire into the specific disciplinary issues that led to the homeschooling decision was not outside the zone of reasonable disagreement.

The trial court did not abuse its discretion in excluding the specific instances of conduct. We overrule Appellant's first issue on appeal.

13

In his second issue, Appellant contends that the trial court erred when it failed to suppress the second audio-recorded statement that he gave to Sergeant Fuentes. Appellant argues that the admission of the statement violated both federal law under *Miranda v. Arizona* and state law under Article 38.22 of the Texas Code of Criminal Procedure. Specifically, Appellant argues that, at the time that he gave the interview, his alleged intoxication rendered him incapable of giving a voluntary, informed waiver under *Miranda* and Article 38.22.

In reviewing claims concerning *Miranda* violations and the admission of statements made as the result of custodial interrogation, we conduct the bifurcated review articulated in *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). *Pecina v. State*, 361 S.W.3d 68, 78–79 (Tex. Crim. App. 2012); *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011) ("[W]e measure the propriety of the trial court's ruling with respect to alleged *Miranda* violations under the totality of the circumstances, almost wholly deferring to the trial court on questions of historical fact and credibility, but reviewing *de novo* all questions of law and mixed questions of law and fact that do not turn on credibility determinations."). We afford almost total deference to the trial court's determination of historical facts and mixed questions of law and fact that turn on the evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. Questions of law and mixed questions of law and fact not turning on credibility are reviewed de novo. *Id.* When the trial court does not make express findings of fact, an appellate court must view the evidence in the light most favorable to the trial court's rulings, assuming that it made implicit findings of fact that are supported by the record. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). We will sustain the trial court's decision if it is correct on any applicable theory of law. *Id.* at 662–63.

"It is the State's burden to establish a valid waiver of *Miranda* rights by a preponderance of the evidence." *Leza*, 351 S.W.3d at 349 (citing *Joseph v. State*,

309 S.W.3d 20, 24 (Tex. Crim. App. 2010)). An inquiry into a waiver of *Miranda* rights "has two distinct dimensions." *Ripkowski v. State*, 61 S.W.3d 378, 384 (Tex. Crim. App. 2001) (quoting *Colorado v. Spring*, 479 U.S. 564, 573 (1987)). First, the waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* (quoting *Spring*, 479 US at 573). Second, the waiver must be made "with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (quoting *Spring*, 479 US at 573). However, before it may be said that a waiver of a *Miranda* right is involuntary, there must be some element of official intimidation, coercion, or deception. *Leza*, 351 S.W.3d at 349 (citing *Colorado v. Connelly*, 479 U.S. 157, 169–70 (1986); *Oursbourn v. State*, 259 S.W.3d 159, 170 (Tex. Crim. App. 2008)).

The trial court conducted a pretrial suppression hearing regarding the admissibility of Appellant's second statement to Sergeant Fuentes. At the suppression hearing, Appellant testified that, in the days preceding the second interview, he had ingested a significant quantity (80 to 120 pills) of prescription blood pressure medication and painkillers and drank alcohol. As a result, Appellant claimed to have suffered hallucinations and to have had almost no recollection of the interview with Sergeant Fuentes. Additionally, Lori Adams-Roberts, the health administrator for the Midland County Jail, testified that, on the day after the second interview, Appellant complained that he had been nauseated and that he had been vomiting for the preceding four days. Appellant was given an antiemetic to treat his nausea and vomiting.

Sergeant Fuentes testified for the State. Sergeant Fuentes testified that, at the time of the second interview, he advised Appellant of his rights and that Appellant indicated that he was intelligently, knowingly, and voluntarily waiving them and wished to give a statement. Sergeant Fuentes stated that, although Appellant

15

appeared to be somewhat ill or nervous, Appellant never became ill, did not slur his words, and was able to provide greater detail regarding the events in question than he had in the first interview.

On appeal, Appellant does not appear to contend that law enforcement agents coerced him in any manner. Instead, Appellant argues that his alleged intoxication prevented him from comprehending the consequences of his waiver and, thus, prevented him from making a free and voluntary waiver.

It is well settled that the Fifth Amendment privilege against self-incrimination "is not concerned 'with moral and psychological pressures to confess emanating from sources other than official coercion.'" *Ripkowski*, 61 S.W.3d at 384 (quoting *Connelly*, 479 U.S. at 170). Thus, any assertion that Appellant's intoxication alone, without official coercion, rendered his waiver involuntary is foreclosed as a matter of federal constitutional law. *See Leza*, 351 S.W.3d at 350 (assertion that the defendant's heroin intoxication rendered his apparent *Miranda* waiver involuntary was foreclosed as a matter of federal constitutional law).

However, regarding the second dimension of a *Miranda* inquiry, Appellant's intoxication does have a bearing on whether Appellant was aware of his rights and the consequences of his waiver. *See id.* at 351 (explaining that heroin use does have a bearing on whether a *Miranda* waiver was knowing and intelligent). Yet, although intoxication is a factor in determining whether a waiver was knowing and intelligent, it is not determinative of the issue. *Ripkowski*, 61 S.W.3d at 384. Though Appellant claims that he was unable to comprehend the consequences of his waiver at the time that he gave his statement, the State presented evidence that Appellant was coherent at the time of the interview. Thus, the trial court was entitled to believe the State's witnesses over Appellant's testimony. *See Leza*, 351 S.W.3d at 351; *Ripkowski*, 61 S.W.3d at 384. The trial court was within its discretion in finding that Appellant validly waived his *Miranda* rights.

16

Similarly, Article 38.22 of the Texas Code of Criminal Procedure also governs the admissibility of statements made by a defendant during custodial interrogation in a criminal proceeding. CRIM. PROC. art. 38.22; *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). Article 38.22, section 3 provides, in part, that an oral statement is not admissible against a defendant in a criminal proceeding unless: (1) the statement was electronically recorded; (2) the defendant was given the warnings set out in Article 38.22, section 2(a) before the statement was made, and they are included on the recording; and (3) the defendant knowingly, intelligently, and voluntarily waived the rights set out in the warnings. *Herrera*, 241 S.W.3d at 526; *see* CRIM. PROC. art. 38.22, § 3(a)(1)–(2). "The warnings provided in Section 2(a) are virtually identical to the *Miranda* warnings, with one exception— the warning that an accused 'has the right to terminate the interview at any time' as set out in Section 2(a)(5) is not required by *Miranda*." *Herrera*, 241 S.W.3d at 526 (footnotes omitted). Thus, both *Miranda* and Article 38.22 require the State to prove two distinct elements—that the prescribed warnings were given to the suspect and that the suspect waived those rights. *See Miranda*, 384 U.S. at 444; *Joseph*, 309 S.W.3d at 24. However, while a statement that is "involuntary" as a matter of constitutional law is also "involuntary" under Article 38.22, the converse need not be true. *Oursbourn*, 259 S.W.3d at 169. Instead, "[c]ircumstances unattributable to the police that nevertheless adversely impact an accused's ability to resist reasonable police entreaties to waive [the accused's] statutory rights, such as intoxication, are 'factors' in the voluntariness inquiry, though they 'are usually not enough, by themselves, to render a statement inadmissible under Article 38.22.'" *Leza*, 351 S.W.3d at 352 (citing *Oursbourn*, 259 S.W.3d at 173).

At the suppression hearing, Sergeant Fuentes testified that he gave Appellant warnings consistent with Article 38.22—including a warning that Appellant had the right to terminate the interview at any time. *See* CRIM. PROC. art. 38.22.

17

Sergeant Fuentes further testified that Appellant stated that he understood the warnings and that he waived them. For the same reasons as set out above, although Appellant's intoxication was a factor in determining whether Appellant comprehended the consequences of his waiver, it was not dispositive, and the trial court was entitled to believe the State's witnesses over Appellant's witnesses. Thus, once again, the trial court was within its discretion in finding that Appellant validly waived his rights under Article 38.22.

The trial court did not err in finding that Appellant waived his rights under *Miranda* and Article 38.22. We overrule Appellant's second issue on appeal.

In his third issue, Appellant challenges the trial court's admission of three recorded telephone calls that Appellant made from the county jail. On appeal, Appellant argues that the recording (1) was not properly authenticated under Rule 901 of the Texas Rules of Evidence and (2) contained inadmissible custodial statements under Article 38.22 of the Texas Code of Criminal Procedure. In response, the State contends that Appellant failed to preserve either objection and that, even if Appellant did properly preserve his objections, Appellant's contention based on Article 38.22 is without merit.

A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). If the ruling is within the zone of reasonable disagreement, an appellate court will not disturb it. *Id.*

In order to preserve a complaint for appellate review, a party must present the trial court with a timely request, objection, or motion stating the specific grounds for the desired ruling, if those grounds are not apparent from the context, and must obtain a ruling. TEX. R. APP. P. 33.1(a); *Moore v. State*, 371 S.W.3d 221, 225 (Tex. Crim. App. 2012); *Ford v. State*, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009). Preservation is a "systemic requirement" on appeal. *Ford*, 305 S.W.3d at 532. In

18

order to preserve an issue for appeal, no specific words are necessary so long as the parties and the trial court understand from the context what the objection is. *Id.* at 533; *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

At trial, Rebecca Thompson, a service corporal at the Midland County Jail, testified that the jail uses a recording system to record all telephone calls that are made from the jail. Thompson explained that, in order to place a call, an inmate must enter his inmate ID and his individual PIN number. The inmate must also state his name and repeat a phrase that is used to match the inmate's voice to his PIN number. Based on Thompson's testimony, the State offered as evidence a recording that contained three phone calls that Appellant made while in custody at the jail. As a custodian of the records of recorded phone calls made from the jail, Thompson testified that she had listened to the recording, that the recording did not appear to be altered, and that the recording was a true and correct copy of the phone calls Appellant made from the jail. However, Thompson was unable to identify the physical location of the database where the recording was stored and was also unable to state whether technicians or other individuals had access to the physical storage location.

Appellant offered two objections to the admissibility of the recording. First, Appellant objected on the basis "that we don't have it established that these calls are stored securely because we don't know where they're stored or who has access wherever they may happen to be stored." Second, Appellant presented an objection whereby he argued that *Missouri v. McNeely*, 569 U.S. 141 (2013), rendered any implied waiver by Appellant as to the recording of his phone calls ineffective. The trial court overruled both objections and admitted the recording of the three phone calls into evidence.

On appeal, the State contends that Appellant's first trial objection failed to preserve error as to the authenticity of the phone calls because Appellant neither

19

referenced any rule of evidence or statute nor claimed that the calls had not been properly authenticated. However, in order to preserve error, specific references are needed only if the basis for the trial objection is not clear from the context in which it is made. *Clark v. State*, 365 S.W.3d 333, 337 (Tex. Crim. App. 2012); *Lankston*, 827 S.W.2d at 909; *Williams v. State*, 916 S.W.2d 53, 55 (Tex. App.—Houston [1st Dist.] 1996, no pet.). Here, it is clear from the record that Appellant's first objection was in regard to whether the recording was "what the proponent claims it is," as required by Rule 901. TEX. R. EVID. 901(a). After questioning Thompson about the recording system, including where the recorded calls were stored and who had access to the storage site, Appellant's counsel's objection—that "we don't have it established that these calls are stored securely . . . or who has access [to them]"—is essentially an objection to the authenticity of the recording. It was clear that Appellant was suggesting the recording could have been tampered with or altered. Appellant was not required to specifically refer to Rule 901 or use the words "authentic" or "authenticity" in order to put the State and the trial court on notice that he was objecting to the authenticity of the recording. Appellant's objection was sufficient to preserve his complaint.

As previously stated, authentication requires that the proponent "produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). Authentication may be accomplished by several methods, including by direct testimony from a witness with personal knowledge or by evidence describing a process or system and showing that it produces an accurate result. *Id.* 901(b). A proponent of evidence is not required to "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *Campbell v. State*, 382 S.W.3d 545, 549 (Tex. App.—Austin 2012, no pet.) (quoting *United States v. Chin*, 371 F.3d 31, 37 (2d Cir. 2004)).

In performing its gate-keeping function under Rule 104, the trial court need not be persuaded that the proffered evidence is authentic. TEX. R. EVID. 104; *Tienda*, 358 S.W.3d at 638. Instead, the question of whether an item of evidence is what the proponent claims it to be is a question for the factfinder. *Tienda*, 358 S.W.3d at 638. The preliminary question for the trial court is to decide whether the proponent of the evidence has supplied sufficient facts to support a reasonable jury determination that the evidence is authentic. *Id.*

Here, Thompson testified that, as a custodian of records for the recording, she was familiar with the recording system used by jail personnel to record inmate telephone calls. Thompson described the features and procedures employed to ensure proper identification of the inmate placing each call. Thompson also testified that she had listened to the recording and believed it to be a true and correct copy of Appellant's phone calls. Despite not knowing the exact physical location of the system's server, or whether technicians or other individuals had access to the server's physical location, Thompson's testimony was sufficient to support a reasonable determination that the evidence being offered was authentic. *See Montoya v. State*, 43 S.W.3d 568, 570–71 (Tex. App.—Waco 2001, no pet.) (Officer's testimony that she had listened to a tape of a 9-1-1 call and was the custodian of 9-1-1 tapes was sufficient to find that the tape had been authenticated.). Accordingly, the trial court did not abuse its discretion in overruling Appellant's first objection.

As to Appellant's second objection, the State once again contends that Appellant failed to preserve his objection for appeal. We agree.

Although Appellant now argues that the admission of the recorded phone calls violated Article 38.22, the record is devoid of any indication that Appellant objected under Article 38.22 at trial. Instead, Appellant's second objection at trial was stated by his trial counsel as follows:

> And I'm going to argue to the court that the same logic in Missouri versus McNeely, that Fourth Amendment rights are not trumped by the implied consent statute in the transportation code applies in the situation that we're facing here . . . .
>
> . . . And I would urge that the court find that there is no implied consent, whatever warnings may be on these calls, whatever pamphlets may be handed out by the jail, that the implied consent principle does not apply in this situation.

Appellant made no reference to Article 38.22. Unlike Appellant's first objection as to the authenticity of the recording, this objection was neither specific nor obvious enough to make the trial court aware of an Article 38.22 complaint. Thus, Appellant has not preserved this objection. *See* TEX. R. APP. P. 33.1(a)(1)(A) (requiring complaint be made with sufficient specificity to make trial court aware of complaint, unless specific grounds were apparent from context); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991) (stating point of error on appeal must correspond to objection made at trial).

Nonetheless, even if we were to assume that Appellant preserved an Article 38.22 complaint, his argument is without merit. Appellant's telephone conversations, although made while in custody, do not constitute custodial interrogation. *See State v. Scheineman*, 77 S.W.3d 810, 813 (Tex. Crim. App. 2002) (observing that no custodial interrogation occurred when the defendant's custodial statement was not made in response to interrogation by law enforcement personnel but, instead, was made when the defendant was alone with a codefendant). As such, Article 38.22 is not applicable to the situation.

We conclude that the trial court did not abuse its discretion when it admitted the recording of Appellant's three telephone conversations into evidence. We overrule Appellant's third issue on appeal.

We affirm the judgments of the trial court.

JIM R. WRIGHT

SENIOR CHIEF JUSTICE

November 15, 2018

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.;
Gray, C.J., 10th Court of Appeals[2];
and Wright, S.C.J.[3]

Willson, J., not participating.

---

[2]Tom Gray, Chief Justice, Court of Appeals, 10th District of Texas at Waco, sitting by assignment to the 11th Court of Appeals.

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.